## UNION S. S. CO. OF NEW ZEALAND, Limited, v. STANDARD OIL CO. OF CALIFORNIA.

### No. 14367.

District Court, W. D. Washington, N. D.

Feb. 28, 1945.

Edward G. Dobrin, Stanley B. Long, and Bogle, Bogle & Gates, all of Seattle, Wash. (J. V. Clyne and MacRae, Montgomery & Clyne, all of Vancouver, B. C., of counsel), for libelant.

Frank P. Helsell and Hulbert, Helsell & Paul, all of Seattle, Wash., and Wallace L. Kaapcke and Pillsbury, Madison & Sutro, all of San Francisco, Cal., for respondent.

BOWEN, District Judge.

It seems to the Court, since the fault of the Awatea has been admitted, that it makes no difference in how many respects she was at fault; and that the sole question for consideration here is whether or not the Lombardi likewise was at fault.

The chief difficulty that the Court has found with the evidence in the trial of this case has been due to some confusion resulting from the statements and real evidence which came from those engaged on the Lombardi and from the navigating instruments and records kept on that vessel.

The principal instance of the confusion on the part of the witnesses occurred in the case of the master of the Lombardi. He seemed to the Court to be an honest man, one who would be fair to his men on board that ship and to his responsibility to the ship owner and cargo owners and others concerned.

But, as indicated by his manner of testifying, there seemed to be some disturbing or other embarrassing stimulus operating upon him during the time he was testifying. He acted like a man who was very uneasy on the witness stand and his explanations of discrepancies were not convincing. No satisfactory reason appeared to the Court as to why he would give the Court that impression.

Of all the witnesses expected to be clear and direct and unconfused in their statements on the witness stand, the master of

the ship, who was in charge of the operation at the critical times connected with the collision, would ordinarily be expected to relate clearly the important facts.

For some reason, including what I have just said, the testimony of the Lombardi's master, particularly that relating to visibility before his vessel, has not been as helpful to the Court as it might have been under conditions different from those mentioned; but I do not wish in any way to cast reflection upon his integrity, because I believe that he manifests the highest integrity.

In my opinion the issues readily become narrowed to one principal issue.

■ I do not take any stock in the evidence, by reason of its lack of convincing power, introduced to prove that the Lombardi was on an improper course while sailing through the Strait of Juan de Fuca.

■ As to the charge that the Lombardi violated Article 32 [33 U.S.C.A. § 142], when the master gave the "hard aport the helm" order just before the collision, I do not think any harm or effect came from the unlawful order made by the Captain at that time. At least, there is no proof that any effect whatever came from it. All the proof on this issue is to the effect that the order was unheard and unexecuted. Therefore, there could not possibly have been any contribution from that cause to any fault of the Lombardi.

■ Nor do I think that the libelant sustained the burden of showing that the Lombardi failed to stop her engines immediately upon hearing the fog whistle. There is some evidence, and possibly there are some circumstances, that might support argument upon that issue; but I do not feel that the affirmative of that issue was established by the libelant by a preponderance of the evidence or by clear and convincing evidence.

■ The one remaining issue, which I think was regarded by both sides as the central and by far the most substantial issue in the case, is that of whether the Lombardi violated that part of Rule 16, [33 U.S.C.A. § 92], requiring a vessel in a fog to proceed at a moderate speed, "having careful regard to the existing circumstances and conditions." In the Silver Palm, 94 F.2d 754, 757, the 9th Circuit Court of Appeals interpreted that rule to mean "that a vessel shall not proceed in a fog at a speed at which she cannot be stopped dead in the water in one-half the visibility before her."

The scope of the testimony could inspire extended discussion of the various aspects of the testimony of the several witnesses, but in my opinion that would not serve any more useful purpose than for the Court to simply announce what the Court finds from a consideration of all the evidence, and from its preponderance. I have heard and considered all the testimony. I have observed the demeanor of all the witnesses who have testified before the Court. I have read and considered all the briefs of counsel, and have heard and considered the able and exhaustive oral arguments of counsel on both sides.

■ From these considerations, and from a preponderance of the evidence and by the clear and convincing evidence, the Court finds and decides that the visibility of the Lombardi before her, when the approach of the Awatea was first made known to the Lombardi by sound or sight was no more than 450 feet; and that the Lombardi, under the circumstances surrounding her movement and situation at that time, could not have stopped dead in the water in one-half of that 450 feet, the visibility then before her.

Under the rule of this Circuit the Lombardi was at fault for thus breaking the rule of Article 16 as interpreted in the Silver Palm, and the damages in this case should be divided between the two colliding vessels.